**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Elijah COSBY, a/k/a Tootie Pie, Defendant-Appellant.**

No. 78–5633.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1979.

---

Gerald P. Word, Carrollton, Ga., for defendant-appellant.

Dorothy Y. Kirkley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

 To sustain a conviction for making false material declarations to a grand jury, the prosecution must establish not only that the defendant made the statements charged to the grand jury, and that he knew them to be false, but also that they were material to the grand jury's investigation. On the ground that the government failed to offer legally sufficient evidence to prove that his statements were material to the grand jury's investigation, the defendant, Elijah Cosby, challenges his convictions on two counts of making false material declarations to a grand jury, in violation of 18 U.S.C. § 1623(a).[1] Finding his contention correct, we reverse the convictions.

On January 19, 1977, a federal grand jury was impaneled in the Northern District of Georgia. It is alleged that the grand jury was investigating police corruption in Carrollton, Georgia. Elijah Cosby testified under oath before the grand jury under a grant of immunity in December, 1977. Cosby was asked, *inter alia*, whether he had ever delivered non-tax-paid liquor, whether he had ever possessed quantities of marijuana in excess of one pound, whether he had used, possessed, and distributed controlled substances other than marijuana, and whether he had obtained marijuana at the Carrollton Police Department more than two times. Cosby denied that he had done any of these things.

 Cosby was subsequently indicted on four counts of making false material declarations before a grand jury. In order to demonstrate that Cosby's declarations were material[2] to the grand jury's investigation, the government presented[3] the testimony of an FBI agent who was working with the grand jury and the testimony of a witness who appeared before the grand jury concerning what they knew of the purposes of its investigation. In addition, the court examined the indictment, which recites the matters under consideration by the grand jury and the questions asked of Cosby. On the basis of this evidence, the trial court made a finding that Cosby's declarations were material to the subject of the grand jury's investigation. The jury found Cosby guilty on two counts and not guilty on the other two.

 The controlling legal principles are well settled. In a prosecution under 18 U.S.C. § 1623, the government bears the burden of proving that the defendant's statements were material to issues before the grand jury. *E.g., United States v. Damato*, 5 Cir. 1977, 554 F.2d 1371, 1373; *United States v. Gremillion*, 5 Cir. 1972, 464 F.2d 901, 904–05, *cert. denied*, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672. The statements need not be material to a particular issue, but may be material to collateral matters that might influence the outcome of decisions before the grand jury. *See, e. g., United States v. Cuesta*, 5 Cir. 1979, 597 F.2d 903, 920; *Damato, supra*, 554 F.2d at 1373; *United States v. Whimpy*, 5 Cir. 1976, 531 F.2d 768, 770.

 The government may prove materiality in various ways: it may introduce

---

1. Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. "The test of materiality is 'whether the false testimony was capable of influencing the tribunal on the issue before it.'" *United States v.*

*Damato*, 5 Cir. 1977, 554 F.2d 1371, 1372, *quoting Blackmon v. United States*, 5 Cir. 1940, 108 F.2d 572, 573. *Accord, United States v. Cuesta*, 5 Cir. 1979, 597 F.2d 903, 920; *United States v. Abrams*, 5 Cir. 1978, 568 F.2d 411, 420, *cert. denied*, 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133.

3. The court determines whether the government has sustained its burden of demonstrating materiality. *E.g., Damato, supra* note 2, 554 F.2d at 1373; *United States v. Edmondson*, 5 Cir. 1969, 410 F.2d 670, 673 n.3, *cert. denied*, 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430. *See also Sinclair v. United States*, 1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692.

the transcript of prior proceedings, *see, e. g., Damato, supra*, 554 F.2d at 1373, or it may present testimony from the foreman of the grand jury, from one of its members of from other persons who were authorized to witness its proceedings, *e.g., United States v. Saenz*, 5 Cir. 1975, 511 F.2d 766, 768, *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277. *See also Cuesta, supra*, 597 F.2d at 921; *Damato, supra*, 554 F.2d at 1373. While this court has never stated that only certain types of evidence may be used to prove materiality, we have generally looked with disfavor on prosecutions brought under Section 1623 that have not used complete transcripts or testimony of members of the grand jury. *E.g., Damato, supra*; *United States v. Brumley*, 5 Cir. 1977, 560 F.2d 1268, 1277. *But see Cuesta, supra*, 597 F.2d at 921.

▆ In this case the government chose to use as evidence of materiality the testimony of an FBI agent who was assigned to work with the grand jury, the testimony of a witness who merely testified before the grand jury and the indictment. No explanation has been offered for the failure to adduce the transcript of the grand jury proceedings or the testimony of the foreman or some other member of the grand jury.[4] Examination of the evidence that was presented leaves us unable to conclude that it was legally sufficient to support the court's finding of materiality.

▆ The perjury indictment is useless for this purpose. The government attempts to lift the indictment into materiality by its own bootstraps, urging that "the indictment recites in each count the matters un-der consideration by the grand jury." The mere *allegation* of the scope of the grand jury's investigation is hardly *proof* of that fact. An indictment is not self-proving as to any of its charges. Similarly, the transcript excerpts that were contained in each count of the indictment do not show the scope of the investigation, let alone that the answers were material to the decision-making process. This "evidence" proved nothing about materiality.

The government points also to the testimony of Larry Strickland, who appeared as a witness before the grand jury and at Cosby's trial. Strickland testified in the main about Cosby's connections with marijuana sales and about a conversation with Cosby concerning selling marijuana for Police Chief Lambert. The government cites only one page in the trial transcript "indicating that he [Strickland] knew what the scope of the investigation was". On this page, only one statement appears that could possibly be construed as indicating that Strickland knew the scope of the investigation.[5] Even if it is assumed that this testimony demonstrates that Strickland knew the scope of the investigation, it is wholly insufficient to prove what the scope was. No attempt was made to show the basis for Strickland's knowledge. At best, this is a hearsay report of the scope of the investigation.

The government relies primarily on the testimony of FBI Special Agent Ron E. Knauber to meet its burden of showing materiality. Knauber was sworn in as an "agent"[6] of the grand jury in July, 1977.

---

4. Cosby sought to introduce the transcript of the grand jury proceedings, or at least his entire testimony, several times during the trial. However, it was not introduced because the court sustained the government's objections. The foreman of the grand jury testified at Cosby's trial. However, the government confined his testimony to the facts that Cosby appeared before the grand jury and that he testified under oath.

5. "Q: You said something about you were testifying against Mr. Lambert. Where did you get that idea, Mr. Strickland?

A: Okay, the first subpoena I got is that we [sic] were coming to try to stop the corruption in Carroll [sic] County. All right. So I accepted that. I know that there is corruption, and I am not going to bite by tongue in nobody's favor. I am just going to speak me, because I am living me. All right. All right, other than that, you can confront me with it."

6. At oral argument the Assistant United States Attorney stated that it was the practice in the Northern District of Georgia to swear in an FBI agent as the "agent" of the grand jury. The purpose is to have someone available to assist

Knauber testified that: he was stationed in Atlanta; he was a case agent in the case of *United States v. Elijah Cosby*; the case *against Cosby* arose out of a grand jury investigation in July, 1977; and he advised the grand jury that "the nature of the investigation stemmed around police corruption in Carrollton, Georgia." He also testified that there had been allegations that drugs seized by the police department were being resold illegally by Elijah Cosby, and that another "facet" of the investigation (meaning presumably his own) "stemmed around" Cosby and the chief of police "being involved" in "illegal moonshine or whiskey operations". A third facet of the investigation, he told the grand jury, was the operation of an illegal whiskey parlor or "shot house" with the permission of the police department. Knauber interviewed all but one of the witnesses who testified before the grand jury, and informed them of the nature of the investigation. On instructions of the United States Attorney, he told the witnesses that they were not targets of the grand jury investigation.

Knauber was never present when the grand jury actually questioned the witnesses that he had located and interviewed. There is no evidence that the grand jury ever told him the scope of its actual inquiry or directed his activities. There is no evidence to indicate whether the grand jury proposed to inquire into all three of Knauber's "facets," only one of them, or whether, having heard him, the grand jurors decided to look into some other matter. An FBI agent, even one sworn in as an "agent" of the grand jury, neither controls, directs nor participates in grand jury decisions. His statements about his investigation merely attest to his own purposes and actions, not to the nature, scope or extent of the grand jury's inquiry.

█ The Fifth Amendment guarantee, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" was designed "to provide a fair method for instituting criminal proceedings," *Costello v. United States*, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397, 402. "[I]n this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor." *Ibid. See also United States v. Calandra*, 1974, 414 U.S. 338, 342–46, 94 S.Ct. 613, 617–19, 38 L.Ed.2d 561, 568–570. The grand jury performs its investigative function under the direction but not under the control of the prosecutor. Congressional Research Service, The Constitution of the United States of America 1090 (1973).

█ Historically a bulwark of the citizen, the grand jury must not be perverted into a rubber stamp for prosecutors or investigatory agencies.[7] The constitutional purpose of the grand jury is surely thwarted if we assume that the direction or scope

the grand jury in consolidating, analyzing and summarizing records or testimony produced by the grand jury in large or complex cases. In a requested supplementary brief, the government was unable to cite a statute permitting this practice. However, it did cite cases where the use of third parties to assist grand juries has been considered and approved. *See, e.g., In re April 1956 Term Grand Jury*, 7 Cir. 1956, 239 F.2d 263, 272, *cert. denied sub nom. Shotwell Mfg. Co. v. United States*, 1957, 352 U.S. 998, 77 S.Ct. 552, 1 L.Ed.2d 544; *United States v. United States Dist. Ct.*, 4 Cir. 1956, 238 F.2d 713, 723, *cert. denied*, 1957, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365. *Cf. United States v.*

*Echols*, 5 Cir. 1976, 542 F.2d 948, *cert. denied*, 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387, (qualified movie projectionist, sworn as a witness, was not an "unauthorized person" barred from grand jury proceedings). For the purposes of this opinion, we will assume, without deciding, that this is a proper practice.

7. 1 N. Dorsen, P. Bender & B. Neuborne, Emerson, Haber & Dorsen's Political and Civil Rights in the United States 459 (1976). *See generally* references cited in *id.* at 463–64; L. Clark, The Grand Jury—The Use and Abuse of Political Power (1975); L. Freeman, The Grand Jury: Shield or Sword? (1972).

of its inquiries is determined by the investigators who bring evidence to its attention.

■ The trial court was justified in believing that Knauber truthfully reported what he told the grand jury. Even if we accept the government's contention that a sworn "agent" of the grand jury has a special role in grand jury investigation, a proposition about which we express no opinion, the agent does not determine the actual scope of the investigation.[8] The agent does not know the mind of the principal, and cannot save by what the principal says or does. Evidence designed to show the state of mind of another is admissible as an exception to the hearsay rule. Federal Rules of Evidence, Rule 803(3). *See also* 2 Wigmore on Evidence § 661 (3d ed. 1940). Here, however, all we know is what Knauber said he told the grand jury and prospective witnesses, and what he said he was directed by the prosecutors to tell witnesses. We consider this insufficient, even when linked with the other evidence proffered, to establish the grand jury's purpose.

We have examined the record thoroughly to determine whether there may be other evidence to indicate that Cosby's testimony was material to the grand jury's investigation. Like the trial court, we are hampered in this task because the transcript of the grand jury investigation has not been made part of the record. Even if we had no doubt that Cosby's testimony was generally material to the investigation, the issue is whether the statements quoted in the perjury indictment were material. *Damato, supra*, 554 F.2d at 1374.

8. In contrast to the contention implied in its original brief and at oral argument, in its supplemental brief, the government acknowledged that an "agent" of the grand jury is not endowed with special powers:

We do not contend that swearing in such third persons as an "agent of the grand jury" gives them the status of a member of the grand jury. The record in this case clearly shows that the "grand jury agent" here did not attend the sessions. Clearly he could not and did not.

Because of our conclusion that the government failed to prove that Cosby's statements were material to the grand jury's investigation, we must consider the remedy for the failure. In past cases, the circuit has not granted a consistent remedy. In *Brumley, supra*, we ordered that the district court enter a judgment of acquittal because proof as to materiality was so totally lacking and the probability of establishing it was so remote. 560 F.2d at 1278. In contrast, in *Damato, supra*, the case was remanded for a new trial because the "evidence did not show that appellant's statements were *not* material" and because the panel believed that the government might be able to present sufficient evidence of materiality. 554 F.2d at 1374. However, after those cases were decided, the Supreme Court made it clear that the proper remedy for failure to present sufficient proof is acquittal. *United States v. Burks*, 1978, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1, 12. Therefore, the convictions are REVERSED and the case is REMANDED for entry of a judgment of acquittal.

REVERSED and REMANDED.

\* \* \* \* \* \*

Neither the action of a "grand jury agent" nor the action of the U.S. Attorney or other government attorneys can bind a grand jury.

\* \* \* \* \* \*

The ultimate decision is always with the grand jury. They may return a true bill or no bill or they may adjourn for the day and go home.