UNITED STATES of America,
Plaintiff-Appellee,

v.

William Merle THOMPSON,
Defendant-Appellant.

No. 79–5218.

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1981.

⊶36

John Mark McDaniel, Robert M. Ship-
man, Huntsville, Ala., for defendant-appel-
lant.

J. R. Brooks, U. S. Atty., Birmingham,
Ala., for plaintiff-appellee.

Before JONES, BROWN and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Convicted of three separate charges of making false material statements before a grand jury in violation of 18 U.S.C. § 1623, William Merle Thompson contends that the government failed to prove the materiality of the statements to any investigation being made by the grand jury, and that his answers to the questions asked him were not shown to have been intentionally misleading. We conclude both that materiality was proved and that Thompson's answers were sufficiently shown to have been intentionally misleading to warrant that conclusion beyond reasonable doubt. We, therefore, affirm the conviction.

In May 1978, a federal grand jury in the Northern District of Alabama was investigating gambling and racketeering. That grand jury returned an indictment in June 1978 against David Headrick, the former sheriff of Madison County, and others, charging them with having engaged in a conspiracy to violate the Racketeer Influenced and Corrupt Organizations (RICO) Act by participating in an enterprise to solicit gamblers, bookmakers and operators of games of chance to pay money to Sheriff Headrick for the privilege of conducting their illegal operations free from interference by the Sheriff. In the course of the investigation that led to the indictment, the grand jury called Thompson as a witness. He was asked, among other questions: whether he had personally run card games or gambling games in Madison County (Count I); whether he had paid money to Sheriff Headrick or to anyone on Headrick's behalf or to Headrick's "defense fund" (Count II); and whether he knew one "Tex" Johnson (Count III). He answered the questions relating to each topic in the negative. The falsity of these statements was the basis of the indictment. Thompson's motions to dismiss, for a bill of particulars and for other pretrial relief, were denied.

I.

■ Materiality of the statements made is patently an essential ingredient of the offense of making a false *material* declaration to a grand jury under oath.[1] In determining whether Thompson's statements were material, we traverse a well travelled path, following several prior decisions of this Court. The issue of materiality is a legal question to be decided by the trial judge, *United States v. Forrest*, 623 F.2d 1107, 1113 (5th Cir. 1980), *United States v. Bell*, 623 F.2d 1132, 1134 (5th Cir. 1980), and its determination focuses·on the questions "whether the false testimony was capable of influencing the tribunal on the issue before it," *United States v. Cosby*, 601 F.2d 754, 756 n.2 (5th Cir. 1979) (citations omitted), or whether "the testimony would have the natural effect or tendency to influence, impede, or dissuade the Grand Jury from pursuing its investigation," *United States v. Gremillion*, 464 F.2d 901, 905 (5th Cir.), *cert. denied*, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1977).[2]

■ The scope of the grand jury's inquiry and the materiality of the declaration to that inquest are generally, and usually best, proved by introduction of a complete transcript of the grand jury proceedings or by testimony of the foreman or some other member of the grand jury. *United States v. Cosby*, 601 F.2d 754, 757 (5th Cir. 1979).

1. Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under Section 1746 of Title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C.A. § 1623(a).

2. It is not essential that the statements be material to a particular issue; it suffices that they be material to collateral matters that might influence the outcome of decisions before the grand jury. *United States v. Cosby*, 601 F.2d 754, 756 (5th Cir. 1979).

However, the custom of proceeding in one of these fashions should not lead to the conclusion that they are the exclusive methods of establishing what the grand jury was investigating or the materiality of the questions to that investigation. Indeed, while the recording of grand jury proceedings is now required, F.R.Crim.P. 6(e)(1), a complete recording was neither commanded nor routinely made before 1979. In the absence of such a record, materiality was usually established by other means. *See, e. g. United States v. Cuesta*, 597 F.2d 903 (5th Cir. 1979) (testimony of United States Attorney who witnessed the grand jury proceedings); *United States v. Parr*, 516 F.2d 458 (5th Cir. 1975) (testimony of grand jury foreman); *United States v. Saenz*, 511 F.2d 766 (5th Cir. 1975) (testimony of a grand juror).

■ In the present case, the government, to satisfy its burden of proving materiality, introduced the indictment brought against Sheriff Headrick by the same grand jury that questioned Thompson. That indictment discloses that the grand jury was investigating payments made to the Sheriff by gamblers. The indictment alleges that one of the numerous overt acts committed pursuant to the conspiracy charge was a request by Sheriff Headrick directed to James "Tex" Johnson, asking him to approach Huntsville area gamblers on the Sheriff's behalf. The City of Huntsville is in Madison County. It was, therefore, a reasonable inference that it was material to investigating Sheriff Headrick's actions and the possible complicity of "Tex" Johnson, as well as any other evidence that Thompson might provide, to determine whether Thompson was a gambler, whether he, or anyone else, had contributed money to Headrick and whether he knew Johnson.

In addition, the Assistant United States Attorney testified that he was "helping to direct" the grand jury investigation. He was present when defendant Thompson testified before the grand jury and he heard all of Thompson's testimony. He testified that the grand jury was conducting an inquiry into the manner in which Sheriff Headrick had run the Sheriff's Office, and

was investigating allegations that the Sheriff had solicited money from gamblers in return for which he would allow them to conduct their games of chance free of law enforcement interference.

In *United States v. Cosby*, 601 F.2d 754 (5th Cir. 1979), we held that the testimony of a Federal Bureau of Investigation agent, who was not present in the grand jury room, did not suffice to prove the materiality of questions put to a grand jury witness. We reasoned that, because the agent did not witness the actual questioning by the grand jury, his statements proved only "his own purposes and actions, not the nature, scope or extent of the grand jury's inquiry." *United States v. Cosby*, 601 F.2d 754, 758 (5th Cir. 1979). We have held, however, that those who actually witness the grand jury proceedings may testify to the subject matter of the grand jury investigation in order to establish the materiality of testimony given to it. *See United States v. Damato*, 554 F.2d 1371 (5th Cir. 1977) (dictum); *United States v. Cuesta*, 597 F.2d 903, 921 (5th Cir. 1979); *United States v. Saenz*, 511 F.2d 766, 768 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975). In *Cuesta*, the evidence concerning materiality consisted of the defendant's testimony before the grand jury, a taped conversation between the defendant and a third party and the testimony of an Assistant United States Attorney who had participated in the grand jury investigation. In reaching the conclusion that there was sufficient evidence of materiality, we relied principally upon the United States Attorney's testimony.

The evidence concerning the materiality of the statements made by Thompson, the indictment, the testimony of a witness to the proceedings and the transcript of Thompson's testimony before the grand jury, was more extensive than that presented in *Cosby* and was certainly as probative as that relied upon in *Cuesta*. While an indictment brought by the same grand jury may not always prove the scope of the investigation, the Headrick indictment did. *See United States v. Bell*, 623 F.2d 1132

(5th Cir. 1980) (affirming trial judge's conclusion that the false declaration was material, where the original and superseding indictments were the primary proof of the scope of the grand jury's investigation). Additionally, the probative value of the indictment was buttressed by the testimony of the Assistant United States Attorney, the only person, in addition to the court reporter and the witness' attorney, authorized to be present while the grand jury questions witnesses. F.R.Crim.P. 6(d). As in *Cuesta*, the testimony of Thomason, the Assistant United States Attorney who here conducted the grand jury investigation, was probative of the materiality of the statements made by Thompson. Finally, we note that the transcript of Thompson's testimony before the grand jury, read as a whole, supports the conclusion that his testimony before the grand jury was material. Therefore, we conclude that the three relevant statements upon which the perjury indictment was based were material within the meaning of 18 U.S.C. § 1623.

## II.

Thompson also challenges the sufficiency of the evidence to sustain his conviction on Count 1 of the indictment. That count charged him with making a false material declaration in the following testimony:

Q: Have you ever run card games or gambling games in Madison County?

A: Me, personally, run them?

Q: Yes, sir.

A: No, sir.

Thompson contends that this statement was insufficient because he did not "run card games or gambling games" in the sense of "personally" running them.

The false material statements statute, 18 U.S.C. § 1623, is to be strictly construed and not invoked "simply because a wily witness succeeds in derailing the questioner so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States*, 409 U.S. 352, 361, 93 S.Ct. 595, 601,

34 L.Ed.2d 568 (1973). This does not mean, however, that question and answer must be aligned in categorical and digital order. If the answer to an arguably ambiguous question is sufficiently explicit to satisfy the jury beyond reasonable doubt that the defendant knowingly made a false statement, then the statement may serve as the predicate for the offense of making a false material declaration.

A sergeant in the Sheriff's Office testified at the trial that a raid was conducted on a mobile home belonging to Thompson and that a pool table was found with dice, playing cards and money on it. Thompson acknowledged that he was in charge, was arrested and was charged with various gambling offenses. He eventually pleaded guilty to the charge of possession of a gaming table.

There was also testimony that, while the persons who were present in the trailer gambled, "girls" would collect the money and pass it to Thompson. Further, one of the participants testified that, subsequent to the raid, Thompson told the participant that he would be notified when the game could be relocated. There was other testimony that Thompson invited at least two different persons to "his game." This evidence provided a sufficient basis to present the question whether Thompson "personally" ran a card game to the jury.

The jury might have concluded that Thompson understood the question to be whether he personally gathered the money, threw the dice and otherwise performed all of the acts necessary to run a gaming table and that his answer to the question, thus interpreted, was not untruthful. The jury apparently considered the question to ask whether Thompson had ever personally managed (i. e., "run") gambling games. It concluded that his acts were sufficient to constitute "personally running" such games and that the answer was not only false but intended to be.

Thompson did not suggest either before the grand jury or at the trial that he misunderstood the question. On the contrary, at

trial he confirmed the truthfulness of his grand jury testimony. *See United States v. Crippen,* 570 F.2d 535, 537 (5th Cir. 1978). This evidence warranted the jury's conclusion that Thompson "personally" ran the games. On the basis of the record before us, we are not prepared to hold that, as a matter of law, the question was ambiguous or that the answer was literally true.

Thompson also charges that the questions serving as a predicate for the indictment on Counts 2 and 3 were too vague to support the charge. Having fully reviewed the questions and the record, we think the questions asked of Thompson before the grand jury were sufficiently explicit. Further, we find no merit in Thompson's other assertions of error.

Accordingly, the conviction is AFFIRMED.