UNITED STATES of America,
Plaintiff-Appellee,

v.

Oliver W. PICKETTS,
Defendant-Appellant.

No. 80–2418.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1981.

Decided Aug. 6, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 17, 1981.

Edward J. Calihan, Jr. and Anna R. Lavin, Chicago, Ill., for defendant-appellant

Thomas M. Durkin, Thomas P. Sullivan, James R. Streicker, Robert W. Tarun, William R. Coulson, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, SPRECHER and WOOD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Defendant-appellant Oliver W. Picketts appeals from his sentence upon conviction for violation of 18 U.S.C. § 1623, for making a false declaration before a grand jury. Picketts asserts that there was insufficient evidence to sustain the conviction, that the charge constituted an abuse of the grand jury and violated his Fifth Amendment rights, and that the trial court erred in approving an instruction regarding a good character defense. Picketts received a two-year suspended sentence and was placed on probation for two years including eight months at a work release program. We affirm.

On February 21, 1980, the defendant Oliver W. Picketts was charged in a two-count indictment. Count One alleged that Picketts, an electrician foreman at the Chicago Housing Authority (CHA), engaged in a pattern of racketeering by soliciting and accepting money from CHA electricians in return for his recommendation that they were qualified to receive full union membership status. Count Two alleged that Picketts, under oath, made material declarations before a grand jury, which he then knew to be false, in violation of 18 U.S.C. § 1623.[1] Jury trial lasted from July 8–11, 1980. On July 10, 1980, the trial court granted defendant's motion for judgment of acquittal as to Count One because of a defect in the indictment.[2]

The indictment on Count Two specified as false declarations that Picketts stated that

1. 18 U.S.C. § 1623(a) provides as follows:

> (a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. The Count One indictment was flawed in two respects. As to all the electricians other than

Washington, the alleged solicitations and payments were all made more than five years before the date of the indictment and thus were outside the statute of limitations. Washington testified that he did not seek to receive a B License [The proper reference would be to a "B Card."] but rather that he paid $100 to Picketts because Washington understood that was the price he had to pay for three months employment at the CHA. The court reasoned that if the Count One language about obtaining a B Card was stricken as superfluous, then Picketts was accused merely of soliciting and accepting money from Washington, which does not constitute criminal activity.

he had never solicited or received money from any electricians in connection with their jobs; it further specified that as to six named CHA electricians (William Denman; James Thompson, Jr.; McKinley Madgett; Nathaniel Myart; Sam McClellan; and Kenneth L. Washington) Picketts had denied that he ever accepted or received any money from any of them in connection with their jobs. The Count Two indictment charged that Picketts knew these declarations to be false when made because he knew that he had solicited and accepted money as described in paragraph four of Count One of the indictment. That paragraph charged, in pertinent part, that the defendant knowingly solicited and accepted money from electricians employed by the Chicago Housing Authority in return for the defendant's recommendation that the electricians receive a B License from Local 134 of the International Brotherhood of Electrical Workers, according to the following table:

| Electrician | Approximate Amount of Money | Year |
| --- | --- | --- |
| James Thompson, Jr. | $500 | 1970 |
| William Denman | 500 | 1971 |
| McKinley Madgett | 700 | 1972 |
| Nathaniel Myart | 800 | 1973 and 1974 |
| Sam McClellan | 900 | 1974 |
| Kenneth L. Washington | 100 | 1975 |

Regarding the sufficiency of the evidence, the defense makes several arguments, which we will consider: (1) no evidence exists in the record to show that the grand jury was duly impaneled and sworn; (2) no evidence exists in the record to show that the subject of the grand jury investigation was whether defendant Picketts was soliciting and accepting money from CHA electricians; (3) no evidence exists in the record of the materiality of the false declarations made by Picketts; (4) there is no proof in the record of Picketts being sworn when he appeared before the grand jury; (5) because the indictment charged that Picketts solicited and accepted money for a B License, when in fact there are B Cards but no such things as B Licenses, there was therefore no proof of the falsity of Pickett's grand jury testimony; (6) in order to estab-

lish defendant's guilt, the prosecution had to establish that he lied as to each of the six named electricians. Because the alleged payments by the five other than Washington were outside the statute of limitations, the government cannot establish false declarations within the statute of limitations.

In reviewing the sufficiency of the evidence, we must sustain the verdict of the jury "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Applying this standard, we hold that the evidence of Picketts' guilt of Count Two is sufficient for the conviction to be sustained.

Count Two of the indictment of Picketts charged all of the elements of the offense. Paragraph 3 charged that "[i]t was a matter material to this investigation for the Special January 1979 Grand Jury to know whether OLIVER W. PICKETTE [sic], defendant herein, had solicited or accepted money from electricians in connection with their employment at the Chicago Housing Authority." Paragraph 4 charged that Picketts appeared under oath before the grand jury and made false and material declarations which were listed in detail. From the indictment handed down by the grand jury on the substantive count and the grand jury transcript admitted into evidence, it was proved clearly that the grand jury was investigating whether defendant Picketts solicited and accepted money from CHA electricians. The parties stipulated as to events before the grand jury. Defendants did not challenge at trial the legality of the grand jury and have, accordingly, raised no issue as to its legality.

Defendant next contends that the record contains no evidence of the materiality of the false declarations made by Picketts. Under 18 U.S.C. § 1623, materiality is defined as a statement's "effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Devitt*, 499 F.2d 135, 139 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 95

S.Ct. 1974, 44 L.Ed.2d 466 (1975). The determination of materiality is an essential element of the crime and is a question of law for the court to decide. *United States v. Watson*, 623 F.2d 1198 (7th Cir. 1980).

■ Defendant argues that the only permissible method for establishing materiality is for the prosecution to call the foreperson or other member of the grand jury to testify as to the scope of the grand jury investigation, so that the court can determine whether the declarations alleged to be false were material to the grand jury investigation. Although that is a common method of proving materiality, it is not the only permissible method. Testimony by the prosecuting attorney who worked with the grand jury or introduction of the transcript of the grand jury proceedings are also permissible and common methods of proving materiality. *United States v. Berardi*, 629 F.2d 723, 727 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980); *United States v. Bell*, 623 F.2d 1132, 1135 (5th Cir. 1980). The court in *Bell* decided that materiality could be proved by looking at the indictments which the grand jury issued in order to determine the scope of its investigation. *Id.* In the instant action, the government introduced the grand jury transcript at trial. The transcript shows that immediately prior to the questioning of Picketts, he was advised by the prosecutor that the grand jury was investigating whether Picketts had solicited and received money from CHA electricians. The Count One indictment demonstrates further that these solicitations and payments were a subject of the grand jury investigation. We find that materiality of the declarations of Picketts to the grand jury was proved clearly.

■ Picketts asserts that the prosecution failed to prove another element of the crime, that his declaration was made under oath. We find no merit in this argument. The grand jury transcript of Picketts' testimony begins as follows: "OLIVER WENDELL PICKETTS having been first duly sworn by the Foreman to testify the truth, the whole truth, and nothing but the truth,

was examined and testified as follows: . . . " In *United States v. Devitt*, 499 F.2d 135 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), this court found the introduction of a grand jury transcript and the testimony of a Justice Department attorney who had been present at the grand jury proceedings to be sufficient to show that testimony was under oath. Although we believe it would be better practice for someone present at the grand jury proceedings to testify to the giving of an oath, we find that the transcript of defendant's grand jury testimony was sufficient to prove that he testified under oath.

■ Picketts argues that the indictment charged that he solicited and accepted money "in return for the defendant's recommendation that the electricians receive a B License . . . ," but that this charge was not proved because there exist B Cards but not B Licenses. This court has defined the test of whether a variance between indictment and proof require reversal, as follows:

> In determining the sufficiency of an indictment, "minor or technical deficiencies" no longer require reversal; courts look instead to whether the substantial rights of the defendant have been prejudiced by the omission or error. The same standards apply in determining whether a variance between the charge in the indictment and the proof at trial requires reversal. An indictment is sufficient if (1) it states the essential facts underlying each element of the offense charged, (2) it informs the defendant of the offense charged with sufficient clarity to enable him to prepare his defense, and (3) it provides adequate protection against a second prosecution for the same offense. If the language of the indictment meets these requirements, then a slight variance between the indictment and the proof at trial is considered nonprejudicial.

*United States v. Atchison*, 524 F.2d 367, 370 (7th Cir. 1975) (citations omitted). We find the variance between B License and B Card to be nonprejudicial under this standard. As to the denials by Picketts regarding solicitations of and payments by all the

electricians other than Washington, the record clearly contains sufficient evidence of the defendant's guilt.

Regarding Washington, the position is different because the proof fails to show that Washington's payments were made to receive a recommendation for either a B License or a B Card. If the phrase in the indictment "in return for the defendant's recommendation that the electricians receive a B License from Local 134 of the International Brotherhood of Electrical Workers," is treated as surplusage as to Washington, the indictment still charged Picketts with falsely testifying about whether he had accepted or solicited $100 from Washington "in connection with Washington's job as an electrician at the Chicago Housing Authority; . . ." There is sufficient evidence in the record to prove this charge.

Even if proof failed as to Washington on Count Two, that would not render the conviction invalid. All the government was required to prove was that Picketts testified falsely *one or more* times before the grand jury. Defendant challenges the sufficiency of the evidence regarding several of the electricians. It is not the function of this court to reweigh the evidence or to substitute its judgment for that of the trier of fact. As indicated above, the evidence was clearly sufficient to prove defendant's guilt on Count Two.

Defendant argues that the government failed to prove the allegations in paragraphs 1 and 2 of Count Two, which read as follows:

1. On May 31, 1979, at Chicago, in the Northern District of Illinois, Eastern Division, the Special January 1979 Grand Jury was sitting as a duly impaneled and sworn grand jury.

2. At the time and place aforesaid, the Special January 1979 Grand Jury was investigating whether OLIVER W. PICKETTE, [sic], defendant herein, was soliciting and accepting money from electricians working under his supervision at the Chicago Housing Authority, in violation of Title 18, United States Code, Section 1962.

The elements of the offense were all charged in the succeeding paragraphs of the count and, as shown above, were all proved. The language of an indictment that goes beyond alleging the elements of the statute is mere surplusage which need not be proven. *United States v. Jordan*, 626 F.2d 928 (D.C.Cir.1980); *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

■ Contrary to the defendant's argument, the prosecution was not barred by the statute of limitations from showing the falsity of Picketts' declarations regarding acts which occurred more than five years before the date of the indictment. A grand jury may ask questions about events outside of the statute of limitations, *United States v. Nickels*, 502 F.2d 1173 (7th Cir. 1974), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), or about acts which otherwise would not lead to indictments. *United States v. Jacobs*, 543 F.2d 18 (7th Cir. 1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2632 (1977). Defendant relies upon *United States v. Reed*, 496 F.Supp. 865 (E.D.Ark.1980) to support his argument. The *Reed* court did not hold that under no circumstances could a person be indicted for making a false statement to a grand jury about events for which there could be no valid charge because of the running of the statute of limitations. Rather the *Reed* court ruled that due process barred a § 1623 prosecution "founded on accusations which are based on transactions of 8 to 10 years ago *when no material records, inculpatory or exculpatory, are available and the accused's primary witnesses have died . . . .*" (Emphasis added.) *Id.*, Order at 867. The facts in the instant case are not similar to those in *Reed* and, therefore, the prosecution in this action is not barred merely because the false statements concerned events outside of the statute of limitations.

■ Defendant claims that there was an abuse of the grand jury process and that the grand jury violated his Fifth Amendment rights. The argument is not made

clearly but apparently is that once the grand jury had heard testimony which the assistant U.S. Attorney believed was sufficient to merit his recommendation that defendant be indicted for illegal acts, it was then improper for defendant to be called before the grand jury to be asked if he committed those acts. We find no merit in this argument.

There is nothing improper about a grand jury's calling the target of its investigation to testify. *United States v. Mandujano*, 425 U.S. 564, 583–84, 96 S.Ct. 1768, 1779–80, 48 L.Ed.2d 212 (1976). The defendant could properly have invoked his Fifth Amendment right not to testify, but he chose not to do so. Once he waived his right against self-incrimination, defendant was required to testify truthfully or to risk prosecution for not doing so. The Supreme Court has indicated that "[o]ur legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969), *quoted in Mandujano*, 425 U.S. at 585, 96 S.Ct. at 1780 (Justice Brennan, concurring). *Accord, United States v. Edelson*, 581 F.2d 1290, 1293 (7th Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979).[3]

■ Defendant asserts that the court's instruction regarding his good character defense, made over objection by the defense counsel,[4] constitutes error requiring reversal of the conviction.

The instruction reads as follows:

The circumstances may be such that evidence of good character may alone create a reasonable doubt of the defendant's guilt, although without it the other evidence would be convincing. However, evidence of good reputation should not constitute an excuse to acquit the defendant, if the jury, after weighing all of the evidence, including the evidence of good character, is convinced beyond a reasonable doubt that the defendant is guilty of the crime charged in the indictment.

This court has previously approved this same instruction as a proper and adequate statement of applicable law. *United States v. Ming*, 466 F.2d 1000, 1007 (7th Cir.), *cert. denied*, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972). This instruction does not suffer the defect found to require reversal in *United States v. Leigh*, 513 F.2d 784 (5th Cir. 1975). The instruction in *Leigh* differed from the instruction before us in that it omitted in the last sentence the words "including the evidence of good character." The *Leigh* court indicated that "the jury could easily have formed the impression that reputation evidence could only be used to tip the scales in defendant's favor if the case was otherwise close . . . ." 513 F.2d at 786. The instruction in the present case clearly indicated that the jury was to weigh "all the evidence, including the evidence of good character" to determine guilt beyond a reasonable doubt.[5] Accordingly, we find no error in the giving of this instruction.

Therefore, we affirm the district court's judgment of conviction.

3. Nor do we find any merit in defendant's related argument regarding the "exculpatory no" doctrine.

4. Although defense counsel objected to the instruction, the grounds for her objection do not clearly appear in the record. Because we find no error in the instruction, we do not decide whether the objection at trial was sufficiently concrete to preserve the issue on appeal.

5. Several decisions of the Fifth Circuit have found no error in instructions on character which advised the jury to consider reputation evidence in the same manner it considered all other evidence. *United States v. Gorel*, 622 F.2d 100, 105 (5th Cir. 1979); *United States v.*

*Callahan*, 588 F.2d 1078, 1084–86 (5th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). In *United States v. Lange*, 528 F.2d 1280 (5th Cir. 1976), and *United States v. Furr*, 528 F.2d 578 (5th Cir. 1976), the Fifth Circuit found no error in instructions on good character identical in pertinent respect to the instruction in the present case. Without mentioning *Lange* or *Furr*, the court found the same instruction invalid under *Leigh*, in *United States v. Harris*, 533 F.2d 306 (5th Cir. 1976). The *Harris* decision was criticized in *Callahan*, 588 F.2d at 1086, and apparently has not been followed.