**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Orval W. ANDERSON,
Defendant-Appellant.**

No. 85–2368.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1986.

Decided July 29, 1986.

---

920

Steven A. Kurowski, Merrillville, Ind., for defendant-appellant.

James B. Meyer, U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The defendant-appellant Judge Orval W. Anderson was convicted of knowingly mak-ing a false material declaration in violation of 18 U.S.C. § 1623.[1] Judge Anderson's conviction was based upon testimony he gave in a trial in the District Court that he never disposed of criminal cases involving the charge of Driving Under the Influence of intoxicants in his chambers without the presence of prosecutors while presiding in the Lake County, Indiana, County Court system. Judge Anderson appeals. We af-firm.

I.

On February 15, 1985 Judge Orval W. Anderson testified as a witness in the trial of *United States of America v. John Ma-rine and Kenneth Anderson,*[2] HCR 84–46 (the *Marine* trial), in the United States District Court for the Northern District of Indiana. The defendants in the *Marine* trial were charged with various federal crimes, including racketeering, mail fraud, and extortion resulting from an alleged ticket-fixing scheme operating within the Lake County court system. Nick Thiros, John Marine's defense counsel, subpoenaed Judge Orval Anderson to testify in the *Marine* trial as seven of the twelve cases allegedly "fixed" by the *Marine* defend-ants concerned cases pending while Orval Anderson was the presiding judge. John Marine's defense counsel subpoenaed Orval Anderson because he believed Judge An-derson would be in the best position to clarify what, if any, role John Marine played in the ticket fixing scheme. On direct examination, Judge Anderson testi-fied in general terms concerning the opera-tions and procedures of his court. On cross-examination the government attempt-ed to determine what impact, if any, the defendants in the *Marine* trial could or might have had on cases pending in Judge

1. "§ 1623. False declarations before grand jury or court.

   (a) Whoever under oath (or in any declara-tion, certificate, verification, or statement under penalty of perjury as permitted under § 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, doc-ument, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,-000 or imprisoned more than 5 years, or both." 18 U.S.C. § 1623.

2. Orval W. Anderson is not related to Kenneth Anderson, the defendant in the *Marine* trial.

**922**

Anderson's court. In the course of the government's cross-examination, the following colloquy occurred:

"Q. Did you ever dispose of a case in chambers where a prosecutor wasn't present?

A. No.

Q. Did you—

A. I assume you're talking about misdemeanors. You are not talking about traffic infractions?

Q. No, I'm talking about D.U.I.s. [Driving Under the Influence charges]

A. No, no. Always prosecutors there."

After the conclusion of the *Marine* trial, the government presented Judge Anderson's testimony to a federal grand jury, together with other evidence demonstrating that his testimony in the *Marine* trial was false. The grand jury returned a three-count indictment against Judge Orval Anderson charging him with giving false material testimony at the *Marine* trial and obstructing justice. Count 1, based on the testimony set forth above, charged that Orval Anderson violated 18 U.S.C. § 1623 in making a false material declaration that he knew was false in that he had disposed of numerous criminal cases between January 1, 1980 and April 1983 involving the charge of Driving Under the Influence of an intoxicant[3] in the Lake County, Indiana, County Court, in his chambers without the presence of a prosecutor. Count 2 of the indictment also alleged that Orval Anderson knowingly made a false material declaration in his testimony during the *Marine* trial when he "did knowingly declare ... that during any hearings in misdemeanor cases he conducted in his chambers, either a court reporter was present or a tape recording of the proceeding was made during the period January 1, 1980 through

April, 1983." Count 3 of the indictment charged Judge Anderson with obstructing the administration of justice in giving false and misleading testimony under oath in the *Marine* trial.

The government's evidence at Judge Orval Anderson's trial included, *inter alia*, the testimony of eight individuals arrested and charged with Driving Under the Influence of intoxicants (DUI) whose cases were disposed of by Judge Anderson in his chambers without the presence of a prosecutor.[4] The government also introduced the testimony of Nick Thiros (John Marine's defense counsel), the transcript of John Marine's testimony from his own trial, the transcript of Nick Thiros' closing argument in the *Marine* trial, the transcript of Judge Anderson's testimony at the *Marine* trial, and the indictment charging John Marine and Kenneth Anderson. Following a jury trial the defendant Orval Anderson was found guilty of the false material declaration charged in Count 1, but not guilty of the false material declaration and the obstruction of justice charges contained in Counts 2 and 3.

Orval Anderson appeals his conviction on Count I, raising the following issues: 1) whether the trial court erred in giving its instruction No. 23 and in refusing to give the defendant's tendered instruction No. 24; 2) whether the court erred in determining that Judge Anderson's false statements were material; and 3) whether the defendant-appellant's response to the question asked by the prosecutor was "not responsive to the question asked and [was] literally true" and thus could not be the basis of a conviction for violating § 1623.

## II.

### A. *Jury Instructions*

The trial court's jury instruction No. 23 provided:

---

**3.** During the relevant time period (January 1, 1980 through April 1983) it was a Class A misdemeanor to operate a motor vehicle while intoxicated. Ind.Code § 9–4–1–54(b)(1) (repealed 1983). A misdemeanor is a criminal offense in Indiana. Ind.Code § 35–41–1–6.

**4.** In addition, none of these eight individuals had a distinct recollection of a court reporter being present in Judge Anderson's chambers when he handled their DUI offenses or that a tape recorder recorded the proceedings in his chambers.

"In the operation of their courts and carrying out their judicial duties, Indiana state court judges are governed by a Code of Judicial Conduct adopted by the Indiana Supreme Court.

As applicable to this case the Code of Judicial Conduct provides in part:

A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law ... and, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding.

The term *ex parte* means without the other party. An *ex parte* proceeding, therefore, is any judicial proceeding at which only one party is present.

The criminal cases which are at issue in this trial were adversarial cases. That is, on one side is the prosecuting attorney on behalf of the State of Indiana, and, on the other side is the defendant charged with the particular misdemeanor.

.    .    .    .    .

In any action by a judge, whereby proceedings are conducted which bear on the outcome of a pending criminal case, the Code of Judicial Conduct requires the presence of both the prosecuting attorney and the defendant.

Thus, the submission of a guilty plea by a defendant, whether accepted by the judge or not, requires the presence of a prosecuting attorney."

Orval Anderson claims that instruction 23 sets forth an erroneous statement of Indiana law and misconstrues Canon III A(4) of the Indiana Code of Judicial Conduct. He argues that the State of Indiana statute does not require the presence of a prosecutor at the taking of a guilty plea in a misdemeanor case. He thus contends that the district court's instruction in effect, erroneously gave the cited Indiana Canon of Judicial Ethics the force and effect of law. Judge Anderson emphasizes

that the Canon III A(4) states "a judge *should* accord to every person who is legally interested in a proceeding, or his lawyer, a full right to be heard ...", but fails to employ mandatory language such as the word "shall."

■ The rule in this circuit is that, "[i]n determining the propriety of instructions they are to be viewed as a whole, and as long as the instructions treat the issues fairly and accurately they will not be interfered with on appeal." *United States v. Croft,* 750 F.2d 1354, 1366 (7th Cir.1984) (quoting *United States v. Ray,* 683 F.2d 1116, 1127 (7th Cir.), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982)). Since one of the issues before this court is whether the trial court's instruction No. 23 accurately stated Indiana law, we must also look to decisions of the Indiana courts for guidance. In *In re Terry,* 262 Ind. 667, 323 N.E.2d 192 (1975), the Indiana Supreme Court sustained a hearing officer's findings that an Indiana judge had violated certain rules of the Code of Judicial Conduct and Ethics [5] and as a disciplinary measure, suspended the judge from his office of judge. In discussing the rules that govern the conduct of the judiciary, the court stated:

"Judicial ethics have been increasingly formalized during the twentieth century. This formalization is in part attributable to intensified public interest in the efficient and orderly administration of justice.... In [approving the new Judicial Article to the Indiana Constitution] the citizens of Indiana squarely placed the responsibility for disciplining judges upon this Court. Pursuant to this mandate, we adopted on March 8, 1971, the Code of Judicial Conduct and Ethics under which respondent is charged."

323 N.E.2d at 195. The court's suspension of a judge for violating rules of the Code of Judicial Conduct and Ethics clearly demonstrates that the Indiana Supreme Court considered the Code as having the force and effect of law and thus provides manda-

---

**5.** The Code of Judicial Conduct and Ethics was the predecessor to the Indiana Code of Judicial Conduct, which was adopted in 1975. The court's instruction No. 23 referred to and quoted language from the 1975 Indiana Code of Judicial conduct.

tory standards governing the conduct of judges. Further, in *Jones v. State*, 416 N.E.2d 880 (Ind.Ct.App.1981), the court held that the language of Canon III C(1)(a) of the Code of Judicial Conduct stating that "a judge should disqualify himself in a proceeding ... where ... he has ... personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding" "*requires* recusal" of a judge who has extrajudicial knowledge of disputed evidentiary facts of a case. *Id.* at 881 (emphasis added). Further, the language of Canon III A(4), stating the "judge should accord to every person who is legally interested in the proceeding ... [the] right to be heard ..., and, except as authorized by law, neither initiate nor consider *ex parte* ... communications concerning a pending ... proceeding," clearly provides that both parties, the defendant and prosecutor (who represents the state's interests) are to be present for any hearing since each has an interest in the proceeding. The Canon also states in *mandatory* language that "except as authorized by law" the judge should not conduct "*ex parte*" proceedings. We note that the word "should" is defined as "the past tense of shall," (*Webster's New World Dictionary* at 1349 (1962)) and as listed in *Roget's Thesaurus* means "be obliged, must ... have to." The common interpretation of the word "should" is "shall" and thus a straight-forward construction of Canon III A(4) reveals that it imposes a mandatory rule of conduct upon a judge. *See also Galloway v. Campbell*, 142 Ind. 288, 41 N.E. 597 (1895) (interpreting "should," in an instruction to the jury concerning the weight to be placed on evidence submitted at trial, as an "imperative" rather than "permissive" word). Since the Indiana Court of Appeals in *Jones* interpreted the Indiana Code of Judicial Conduct and the Indiana Supreme Court in *Terry* interpreted its predecessor (the Code of Judicial Conduct and Ethics) as imposing a mandatory standard of conduct upon judges in Indiana, the court's jury instruction No. 23 stating that the Code of Judicial Conduct requires the pres-

ence of both the prosecuting attorney and the defendant at any proceeding which bear on the outcome of a pending criminal case is a proper statement of Indiana law.

■ Judge Anderson also contends that the trial court's giving of this jury instruction No. 23 substantially prejudiced his right to a fair trial in directing the jury to an issue they were not required to decide since Count 1 of the indictment fails to allege that a prosecutor must be present at the submission of a misdemeanor-defendant's guilty plea. We disagree since any possible prejudice to the defendant resulting from the giving of instruction No. 23 was minimal, if any, due to the limiting instruction given as the court's jury instruction No. 25.

"I caution, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in this case. The defendant is not on trial for any act or conduct or offense not alleged in the indictment.

Thus, whether or not the defendant acted properly or improperly in failing to have a prosecutor present at proceedings in chambers as alleged; or, whether or not the defendant acted properly or improperly in failing to cause recordings to be made of proceedings in chambers as alleged; are not issues for you to determine. The defendant is on trial only for the offenses charged in the indictment, that is whether he knowingly made false declarations at a trial in a U.S. District Court or whether he knowingly sought to obstruct justice by giving false and misleading testimony at that trial."

We hold this clear and explicit limiting instruction adequately protected Judge Anderson in directing the jury to determine only whether he was guilty of the crimes charged in the indictment—whether he made a false material declaration in a trial in a U.S. District Court.

■ Orval Anderson further maintains that the trial court erred in refusing to give the defense requested jury instruction, numbered 24, that provided:

"You are instructed that the statutes of the State of Indiana, the Indiana Rules of Trial Procedure and the Code of Judicial Conduct are the sole authorities for directing what procedures are to be used by all courts in the State of Indiana for the handling of cases.

You are further instructed that there is no statute or rule of procedure in the State of Indiana that requires that a prosecutor be present or that a court reporter be present or that a tape recording be made of a guilty plea to a driving under the influence charge or misdemeanor made by a defendant.

You are further instructed that the laws of the State of Indiana and the rules of procedure specifically authorize a judge to accept a guilty plea and sentence a defendant pursuant to that guilty plea without the attendance of a clerk or other court officials."

"A criminal defendant, while entitled to an instruction on [his] theory of the case, has no right to ... a charge which is incorrect, confusing, or misleading." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). We have concluded that the language in the court's instruction No. 23 properly sets forth the Indiana Code of Judicial Conduct Canon III A(4) requiring the presence of both the prosecuting attorney and the defendant before the judge at a proceeding bearing on the outcome of a criminal case. Thus, the defendant's requested instruction, numbered 24, stating, in essence, that a prosecutor need not be present at the taking of guilty plea in a misdemeanor case is incorrect and might very well confuse and/or mislead the jury. Thus, we hold it was not error for the trial court to refuse to give the requested instruction.

### B. *Materiality*

We next turn to Judge Anderson's contention that the government failed to produce sufficient evidence on the issue of materiality to permit the court to determine as a matter of law that his alleged false statements were material to the *Marine* trial. In concluding that Orval Anderson's

allegedly false testimony was material to the *Marine* trial, the district court reviewed "matters submitted on the issue of materiality, which included, but is not limited to the testimony of Judge Anderson, the indictment and other matters submitted to the court for review...." According to Judge Anderson, the trial court could not properly find his testimony to be material to the *Marine* trial because "None of the recognized means for proving materiality in cases of false swearing before a grand jury as set forth in *United States v. McComb*, 744 F.2d 555, 564 (7th Cir.1984), and which [he] contends, by implication, should be used in this case of false swearing, was used by the government in this case to prove materiality." In *McComb*, this court stated:

"[Establishing a nexus between the grand jury's investigation and the defendant's false statement] can be done by any of a variety of means. The foreperson or some other member of the grand jury may be called to establish the investigation's scope. The attorney who presented the government's case to the grand jury might be called to testify. The transcript of the grand jury proceedings might be introduced into evidence, or the indictments returned by the grand jury might be examined."

*Id.* (citations omitted). Relying on *McComb*, the defendant Orval Anderson asserts: 1) that there is no authority for calling Nick Thiros, counsel for defendant John Marine in the *Marine* trial, to establish the scope of that trial; 2) that the *Marine* indictment does not allege any wrong-doing by the *Marine* defendants in Judge Anderson's court; 3) that the closing argument of Nick Thiros is not evidence and thus could not be considered by the district court in establishing the materiality of Judge Orval Anderson's testimony; 4) and that it was error for the court to consider only partial transcripts from the *Marine* trial, citing language from *United States v. Cosby*, 601 F.2d 754, 756 (5th Cir.1979), that the court has "generally looked with disfavor on prosecutions under

Section 1623 that have not used complete transcripts or testimony of the grand jury." Judge Anderson was prosecuted for making a false material declaration at a criminal trial rather than in a grand jury proceeding, thus the citation to a grand jury proceeding is distinguishable from the present case.

■ "To be punishable under § 1623(a), a false statement must be 'material' to the court proceeding in which it is made." *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985). "The materiality of a false statement ... is a question of law for the court to decide." *United States v. Raineri,* 670 F.2d 702, 718 (7th Cir.1982). The test for materiality is broad: "A statement is material if it is 'capable of influencing the tribunal on the issue before it.' The statement need not be material to any particular issue in the case, but rather may be material to any proper matter of the jury's inquiry, including the issue of credibility." *Scivola,* 766 F.2d at 44 (citations omitted). Although the court in *McComb* approved the use of certain evidence in establishing the materiality of an allegedly false statement (for example, calling a member of the grand jury or the attorney who prosecuted the government case to testify as to the scope of the investigation, introducing the transcript of the grand jury proceeding or the indictments returned by the grand jury), the court in *McComb* failed to state or even infer that the methods of proving materiality as set forth in the decision were the only proper methods. Further, *McComb* involved proceedings before a grand jury and the case at bar involves a false declaration in a criminal trial. A criminal trial proceeding will develop a more complete and thorough picture of the facts than a grand jury proceeding, for in a criminal trial, both the prosecuting and defense attorneys participate and elicit far more evidence through a thorough and exhaustive direct and cross-examination than is generally adduced in a grand jury proceeding. Thus, we conclude the government is not limited to the types of evidence deemed acceptable by the court in *McComb* (the testimony of a grand jury member or the government attorney who prosecuted the case, the grand jury transcript, or the indictments returned by the grand jury) when establishing the materiality of an allegedly false statement made in a criminal trial in a United States District Court. In reviewing the evidence of materiality presented to the district court, we must bear in mind that "[t]he federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all." *Young v. Illinois Central Gulf Railroad Co.,* 618 F.2d 332, 337 (5th Cir.1980) (quoting *United States v. Carranco,* 551 F.2d 1197 (10th Cir.1977)). As Rule 402 of the Federal Rules of Evidence states, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to Statutory authority." We also note that "[b]road discretionary powers in determining the relevancy of evidence is vested with the trial court...." *United States v. Green,* 735 F.2d 1018, 1026 (7th Cir.1984) (quoting *United States v. Sweeney,* 688 F.2d 1131, 1144 (7th Cir. 1982)).

■ In the present case, Judge Anderson does not claim that the testimony of Nick Thiros, the transcript of Thiros' closing argument in the *Marine* trial, the *Marine* indictment, or the transcripts of John Marine's and Orval Anderson's testimony at the *Marine* trial were unfairly prejudicial. Rather, Anderson is arguing in essence that the matters which the trial court allegedly improperly considered were mere surplusage and thus irrelevant as to the issue of the materiality of Judge Anderson's allegedly false testimony. As noted above, the trial court has "broad discretionary powers in determining the relevancy of evidence," *Green,* 735 F.2d at 1026. Thus, the district court may properly consider otherwise admissible evidence submitted on the issue of the materiality of Judge Anderson's testimony unless the district court abused its discretion.

■ Judge Anderson asserts that he "has found no authority where a defense attorney was called upon to testify by the government to establish the scope of the trial in which he was defending." But, as noted above, the Federal Rules of Evidence provide that relevant evidence is to be admitted unless excluded by law. Judge Anderson has presented no caselaw, nor have we discovered any, that supports the exclusion of a defense attorney's testimony at a subsequent perjury trial concerning why the attorney called the witness charged with perjury in the previous trial he defended where the attorney's testimony is relevant in establishing the materiality of that witness' testimony at the prior trial. In the present case, Nick Thiros testified at Judge Anderson's trial that: 1) seven of the twelve cases set forth in the *Marine* indictment allegedly fixed by the *Marine* defendants were originally assigned to Judge Anderson's court; 2) it was "important to the defense in the trial of Marine and [Kenneth] Anderson as exactly to what procedures were used by Judge [Orval] Anderson ... concerning the handling of and processing of DUI cases;" 3) he wanted Judge Orval Anderson to testify regarding the procedures employed in his court to establish that "Marine would have no say-so as to how [cases] were disposed of in [Judge Anderson's court];" and 4) he maintained in his closing argument at the *Marine* trial that Marine could not have participated in fixing cases in Judge Anderson's court because "the evidence suggested he had no connection with" Judge Anderson's court. Thiros' testimony is clearly relevant in establishing the scope of the *Marine* trial, John Marine's theory of defense and the materiality of Orval Anderson's testimony at the *Marine* trial. We conclude the district court did not abuse its discretion in accepting Nick Thiros' testimony for the limited purpose of determining the materiality of Orval Anderson's allegedly false statement.

■ Judge Anderson also contends the trial court could not properly consider Nick Thiros' closing argument in the *Marine* trial when determining the materiality of Orval Anderson's allegedly false testimony. It is true that a closing argument is not considered as evidence in the trial. Exhibit 15 of Mr. Thiros' closing argument in the *Marine* trial was submitted to the court only for the limited purpose of the court ruling on its materiality—the exhibit was neither submitted to the jury nor received in evidence. (Trial transcript p. 1670). The transcript of Nick Thiros' closing argument at the *Marine* trial recites, *inter alia:*

"[L]adies and gentlemen of the jury, if John Marine were in the business of fixing cases for money, you don't have people walk up before the Judge and admit guilt and have findings of record. You don't do that. You go behind the back door. You go out, as Mr. Kinney suggested, in a corner somewhere and you transfer money back and forth.

There is no evidence that any of that ever happened [here].

\* \* \* \* \* \*

... Does it look like—you observed Mr. Anderson, Judge Anderson testify. Does it appear to you that he's the type of person who will let someone from outside his court come in and run it for him or do anything he's not supposed to? I submit to you he is not.

\* \* \* \* \* \*

[The persons whose cases were allegedly fixed] appeared in court, they appeared before a judge. Recommendations were made by the prosecutor, were [sic] applicable. Contacts were made where the prosecutor—with the prosecutor where necessary, and things were done in accordance with the law."

This excerpt from Nick Thiros' closing argument in the *Marine* trial is relevant to establish John Marine's reason for calling Judge Anderson as a witness (to establish that it was impossible for him to have any influence in DUI cases pending in Lake County County Court) and also to demonstrate that materiality of Judge Orval Anderson's testimony in the *Marine* trial.

Although Judge Anderson is correct that the *Marine* indictment did not allege that the *Marine* defendants had engaged in wrongdoing in Orval Anderson's court, the *Marine* indictment alleged that the *Marine* defendants "fixed" 13 cases in the Lake County, Indiana County Court. Nick Thiros testified that "some" of the 13 cases alleged in the *Marine* indictment as being fixed "were disposed of" in Judge Anderson's court. Therefore, Judge Anderson's testimony that he never disposed of cases in his chambers without the presence of a prosecutor was clearly material to the issues raised by the *Marine* indictment regarding the fixing of cases in his chambers. Given this chain of reasoning leading from the *Marine* indictment to the materiality of Judge Anderson's testimony, the *Marine* indictment is clearly relevant to establish the materiality of Judge Anderson's false testimony.

The defendant also maintains that the trial court erred in considering the transcripts of John Marine and Judge Orval Anderson's testimony at the *Marine* trial since their testimony represents only a partial transcript of the entire proceedings. Orval Anderson would apparently require the government to submit the entire voluminous *Marine* trial transcript in his trial. Judge Anderson states that "sole reliance on the testimony of the defendant at the *Marine* trial is erroneous," citing this court's language in *McComb* that "it is generally not good procedure to rely only on the defendant's grand jury testimony." 744 F.2d at 564. Initially, we note that it is evident from the record that Judge Anderson was not prohibited or barred from offering in evidence any part of or the whole transcript of the *Marine* trial, but he did not attempt to do so. We further note that the trial court did not place "sole reliance" on the testimony of the defendant Judge Orval Anderson in the *Marine* trial. Rather the district judge considered "matters submitted on the issue of materiality, which included but is not limited to the testimony Mr. Nick Thiros given on this date together the testimony of Judge Anderson, the indictment and matters submitted to the court for review but not made available to the jury." In light of the matters properly determined to be relevant and thus considered by the district court, the court properly concluded that John Marine's defense was, *inter alia*, that he was unable to affect the outcome of the cases he allegedly "fixed" because of the strict procedures employed in the Lake County Court system as purportedly established by Judge Anderson's testimony. Judge Anderson's testimony that he never disposed of DUI cases in his chambers without prosecutors being present increased the credibility of Marine's defense that he (Marine) was unable to "fix" cases as it would be more difficult to fix a DUI case if the prosecutor were always advised of its disposition (unless the prosecutors participated in the miscarriage of justice of fixing cases as well as the judge). Thus Judge Anderson's testimony that he never disposed of DUI cases in chambers without the presence of a prosecutor "was capable of influencing the tribunal on the issue before it [the ability of the *Marine* defendants' to fix tickets in the Lake County Court]" *Scivola*, 766 F.2d at 44. We hold that there is more than ample relevant evidence in the record to support the district court's ruling that Judge Orval Anderson's testimony was material to the issues before the jury in the *Marine* trial.

Judge Anderson finally contends that the district court's finding that his testimony at the *Marine* trial was material is inconsistent with the jury's acquittal of Judge Anderson on Count 3 of the indictment. According to Judge Anderson, the jury, in finding him not guilty of the crime of obstructing justice as charged in Count 3, "necessarily had to determine that the Defendant did not endeavor to 'influence, obstruct, and impede' the administration of justice by giving false and misleading testimony under oath." Although specific intent to impede the administration of justice is an essential element of a violation of 18 U.S.C. § 1503 (obstruction of justice), *United States v. Moon*, 718 F.2d 1210, 1236 (2nd Cir.1983); *see also McComb*, 744 F.2d at

561, the question of the materiality of an allegedly false statement under 18 U.S.C. § 1623 is separate and distinct from the question of whether a defendant had specific intent to impede the administration of justice. For an allegedly false statement to be material pursuant to § 1623, it must be "capable of influencing the tribunal on the issue before it," *Scivola*, 766 F.2d at 44, but § 1623 provides:

"whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury or permitted under § 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned more than five years or both."

18 U.S.C. § 1623(a). Thus § 1623 fails to contain any requirement that the defendant making the false statement have the specific intent to impede the administration of justice. The fact that the jury found Orval Anderson not guilty of obstruction of justice in Count 3 is not inconsistent with the court's finding that his testimony in the *Marine* trial that he never disposed of DUI cases in his chambers without the presence of prosecutors was material. We hold the district court properly determined that Judge Orval Anderson's false statement in the *Marine* trial concerning the disposition of DUI cases was material.

### C. The Falsity of Judge Orval Anderson's Testimony

The defendant-appellant maintains that his answers to the government's questions were not false and therefore were insufficient to support a conviction on the charge of perjury. Judge Anderson emphasizes that prior to the alleged false material testimony, the government asked him seven questions using the word "hearing":

"Q Mr. Thiros talked to you about who was present in court when you had hearings in court, do you remember those questions by him?

A Did he say something about that?

Q Well, do you recall telling him that one of the three girls was present in court when you had the hearings in court?

A Yes. Yes.

Q Who else would be present in court when you would have hearings in court?

A You would have the bailiffs, the court reporters, clerk and myself.

Q Were your hearings always held in court during the period of January 1st, 1980 through April of 1983?

A Except in unusual circumstances.

Q In those unusual circumstances, where would the hearings be held?

A In the chambers.

Q And who would be present at that time?

A Court reporter, prosecutor, also in the courtroom prosecutor—court reporter, prosecutor. If the court reporter wasn't available, why we would tape record the proceedings.

Q To your knowledge were any proceedings ever held—strike that.

What were the special circumstances that would warrant a hearing in chambers as opposed to the courtroom?

A Well someone that's not able to appear in open court, they get violently ill or something like that, or it's a request of the prosecutor, confidential informant, something like that.

Q Were there ever cases where you had hearings in chambers which did not involve the prosecutor?

A No.

Q Did you ever dispose of a case in chambers where a prosecutor wasn't present?

A No.

Q Did you—

A I assume you're talking about misdemeanors. You are not talking about traffic infractions?

Q No, I'm talking about D.U.I.s.

A No, no. Always prosecutors there."

He maintains that from the government's line of questioning, he could have

construed the question concerning the disposition of cases involving the charge of Driving Under the Influence of Intoxicants to be whether or not he had ever held "hearings" on DUI cases in chambers without the presence of a prosecutor. The defendant-appellant contends that the government failed to present any evidence that "hearings" were held without the presence of the prosecutor as the term "hearing" is commonly defined in legal parlance.[6] Judge Anderson concedes that eight witnesses testified that they pleaded guilty to DUI charges in his chambers out of the presence of a prosecutor, but contends that accepting guilty pleas in chambers is not equivalent to a "hearing." Orval Anderson thus asserts that because the government used the word "hearing" in its prior questioning, his response to the government's question "was at best equivocal and literally true." In support of his contention, Judge Anderson relies on *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), for the proposition that "if an alleged statement is not responsive to the question asked and it is literally true, it cannot be the basis of a conviction for perjury."

■ Judge Anderson's claim that accepting guilty pleas in chambers is not equivalent to a "hearing" is without merit. Judge Anderson's acceptance of a guilty plea and his entry of a final disposition in DUI cases in his chambers terminated the formal proceedings by the state against the DUI defendants and is thus obviously encompassed within the definition of the term "hearing." Furthermore, a review of the Supreme Court's decision in *Bronston* reveals that the defendant-appellant Anderson's reliance on that case is misplaced. In *Bronston*, the prosecuting attorney asked the defendant whether he ever had any bank accounts in Swiss banks. Rather than disclosing that he previously had an account in Geneva, he stated that his company had an account in Zurich for about six months. The answer was misleading and not responsive to the question asked, but was truthful if viewed in isolation. The court held that an unresponsive but literally true answer to questioning cannot support a conviction for perjury. *Id.* at 362, 93 S.Ct. at 601. The specific argument raised by Orval Anderson in the present case (that his answers were literally true) was addressed and rejected by the court in *United States v. Bell*, 623 F.2d 1132 (5th Cir.1980). The defendant in *Bell* was asked "Whether personal or business[,] do you have records that are asked for in the subpoena?" The defendant responded "No, sir, I do not." The defendant argued that he thought he was being asked whether he had records with him that day, while the government contended the question referred to records in his possession either at his office or anywhere else. It was undisputed that the defendant's files contained some of the records referred to in the attorney's question. The court in *Bell* rejected the defendant's argument that his answer to the question was literally true:

"Appellant contends that if we accept his interpretation of the question his answer was literally true. This argument is based on a misunderstanding of *Bronston*. Here, the answer is true only if one of two asserted interpretations of the question is accepted. In *Bronston*, there was no such choice to be made; the question was clear and unambiguous. The distinction between the two cases becomes clearer when the answers themselves are compared. In *Bronston*, the answer was a full, explanatory sentence, the truthfulness of which would be determined without reference to the question. Here, the answer was simply 'No'; the truthfulness of that answer can be determined only by first looking to the question. *Bronston* simply did not deal with a yes or no answer given to a question susceptible to more than one interpretation."

---

6. Anderson cites Black's Law Dictionary definition of hearing: "proceedings of relative formality, generally public, with definite issues of fact or law to be tried, in which parties proceeded against have the right to be heard, and is much the same as a trial."

623 F.2d 1136. The court in *Bell* also stated, "The defendant's understanding of the question is a matter for the jury to decide," and "if after conviction the defendant offers 'a contrived hypertechnical or lame interpretation of his answer' the jury's decision must be left undisturbed." *Id.* (citations omitted).

In the present case, the defendant's explanation, offered after conviction, is a "contrived hypertechnical [and] lame interpretation" of his response to the government's question that is almost unworthy of a legal response. The government asked Anderson, "Did you ever dispose of a case in chambers where a prosecutor wasn't present?" Anderson answered "No." Anderson then clarified the question, asking the government attorney, "I assume you're talking about misdemeanors. You are not talking about traffic infractions?" The government attorney explained "No, I'm talking about DUIs." After obtaining this explanation, Anderson stated, "No, no. Always prosecutors there." Judge Anderson's response clearly was sufficiently explicit, direct, and responsive to the government's question to satisfy the jury beyond a reasonable doubt that the defendant-appellant Orval Anderson knowingly made a false material statement. We hold that Judge Orval Anderson's testimony in the *Marine* trial that he never disposed of a DUI case in his chambers without the presence of prosecutors was a false material statement within the meaning of § 1623 and thus supports his conviction for knowingly making a false material declaration before a United States District Court.

### III.

The judgment of the district court is AFFIRMED.