**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James PHILLIPS, Defendant–Appellant.**

No. 89–2797.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1990.

Decided Sept. 24, 1990.

---

David Capp, Andrew B. Baker, Jr., Asst. U.S. Attys., Hammond, Ind., for plaintiff-appellee.

Steve Lustina, Levinson & Lustina, David N. Gilyan, Merrillville, Ind., for defendant-appellant.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Appellant James Phillips appeals from his conviction of one count of perjury under 18 U.S.C. § 1623 for falsely testifying before the grand jury. Phillips appeals his conviction on two grounds that he alleges marred virtually every juncture of his trial: ineffective assistance of trial counsel and prosecutorial misconduct.

## I. FACTUAL BACKGROUND

The original indictment against Phillips charged him with two counts of perjury as a result of his testimony before a grand jury concerning payments he received from the Gary Insurance Agency through James Bradach in 1985 and 1986. At oral argument, the government explained that the grand jury's inquiry into the payments from James Bradach to Phillips was motivated by a suspicion that James Phillips was one of several persons receiving checks from Bradach who operated as a "laundry" or "conduit" of funds from the Gary Insurance Agency.[1] The government believed that in return for patronizing the Gary Insurance Agency with Lake County, Indiana's insurance business, Lake County commissioners received kickbacks out of the insurance premiums paid to the Gary Insurance Agency ("the agency"). Phillips received checks from Bradach, who was a managing partner of the agency, cashed them, and purportedly returned the laundered cash to Bradach for dissemination to Lake County commissioners or directly delivered the money to the knavish commissioners himself. Phillips, however, was never charged with any criminal offense other than perjury before the grand jury.

Phillips received checks from Bradach totaling $49,000.00 beginning on July 3, 1985, to December 31, 1985, and an additional $30,992.00 from January 13, 1986, to April 15, 1986. When testifying before the grand jury, Phillips alleged that Bradach paid him merely to be "available to deal" with the Teamsters union regarding a credit card scheme in which Bradach participated. Phillips conceded that he did no work for the money.

Richard Fry, Rebecca Lake, Sol Ashbach, and James Ward originally formed Preferred Plus Services, Inc. to implement their idea of marketing a credit card pri-

---

1. The government revealed that the other recipients of Bradach's largess, ostensibly working for the benefit of a separate credit card scheme entitled Preferred Plus, Inc., were Everett Hetrick and Paul Gjebre.

marily to union members to pay the portion of major medical bills not covered by their medical insurance. Lacking the funds to launch their project, this quartet of entrepreneurs sought out a well-heeled backer. Ashbach's accountant, Jack Weichman, suggested Bradach, another client of Weichman's, as a potential financer. When Ashbach approached Bradach concerning the project, Bradach agreed to attempt to secure financing in exchange for a piece of the action. Eventually, the entire project withered on the vine when the parties were unable to fuel the enterprise with funding and the Teamsters failed to embrace the plan with the boundless enthusiasm exhibited by the five corporate principals.

Bradach's involvement with Preferred Plus, and particularly the date of his initial association with the corporation, was undoubtedly a crucial factor in the jury's determination of whether Phillips lied to the grand jury when he testified that the checks Bradach wrote to him in 1985 were to retain his services for the corporation, should they ever be needed. The government maintained at trial that Bradach's payments to Phillips began several months before Bradach became involved with Preferred Plus, and thus the funds paid to Phillips in 1985 were devoted to the nefarious Lake County insurance kickback scheme. Phillips maintained that Bradach had preliminary encouragement from Weichman to become involved in Preferred Plus in the Spring of 1985 and had a formal meeting with the original entrepreneurial quartet on June 10, 1985, during which Bradach received two books explaining the plan from the principals.

On November 16, 1988, a jury found Phillips guilty of perjury under Count I, which concerned his testimony regarding the 1985 payments, and not guilty under Count II, which concerned the testimony about the 1986 payments. The district court granted the defendant's motion for a new trial on Count I due to the government's failure to produce material exculpatory evidence (a daily time sheet maintained by Jack Weichman dated June 10, 1985, and government witness Richard Fry's rap sheet). After Phillips's retrial, a jury again found the defendant guilty under Count I.

Phillips now maintains that many component pieces of evidence admitted by the government at his second trial were either improperly admitted or mischaracterized as a result of prosecutorial misconduct. Moreover, Phillips maintains that his counsel at trial was ineffective due to his failure to object to the introduction of much of the government's evidence, his inadequate cross-examination of government witnesses, and his failure to use or comprehend the importance of exculpatory evidence at his disposal. Phillips offers an intimidating list of prosecutorial overreaching and defense counsel incompetence that suggests that his trial was the high-water mark of injustice. On this record, however, we find Phillips's allegations of misconduct and incompetence to be exaggerated and insufficient to warrant a reversal.

## II. ANALYSIS

Phillips's claims of prosecutorial misconduct and ineffective assistance of counsel are both legion and intertwined: the allegations of prosecutorial misconduct are usually accompanied by claims that defense counsel was ineffective in countering the government's alleged underhandedness. We will therefore discuss the asserted instances of government chicanery and defense counsel incompetence together when discussing each stage of the trial where Phillips alleges the two wrongs occurred consecutively or alternatively.

Generally, claims of prosecutorial misconduct are based on the right to a fair trial under the due process clause. *United States v. Weaver*, 882 F.2d 1128, 1140–41 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *United States v. Mealy*, 851 F.2d 890, 903 (7th Cir.1988). While we are obliged to determine initially whether the challenged remark or conduct was actually improper, *Mealy*, 851 F.2d at 903; *United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987), we must primarily focus on the overall fairness of the trial, not

the blameworthiness of the prosecutor, *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982); *Weaver*, 882 F.2d at 1141. When the alleged prosecutorial misconduct does not rise to a constitutional magnitude on direct appeals of federal convictions, we also consider whether the prosecutor's conduct substantially influenced the trial's result. *United States v. Turk*, 870 F.2d 1304, 1308 (7th Cir.1989); *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

Phillips will only succeed on a claim of ineffective assistance of counsel if he shows that his trial counsel's conduct fell below that of a reasonably competent attorney under the circumstances and there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The sixth amendment requires "reasonably effective assistance of counsel" measured by an objective standard, *id.* at 687–88, 104 S.Ct. at 2064, but that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, 104 S.Ct. at 2065. Moreover, even if defense counsel's performance was deficient, there was no denial of the sixth amendment right to effective assistance of counsel if the result would have been the same regardless of counsel's conduct. *Id.* at 697, 104 S.Ct. at 2069.

### A. *The Government's Cross–Examination of Bradach*

Defense witness Bradach testified during direct examination about expenses that he incurred on behalf of Preferred Plus and stated that he had paid $2,000 to the accounting and consulting firm of Berney and Zweben for accounting work that had been done prior to Bradach's introduction into the plan. On cross-examination, the government queried Bradach about a document dated August 22, 1985, that Al Mazz of the accounting firm of Friedman, Eisenstein, Reamer & Schwartz ("FERS") had provided to Preferred Plus. Bradach adamantly testified that he had paid FERS $3,000 for work ordered by one of the original four entrepreneurs prior to Bradach's entry into the plan. At Phillips's first trial, Bradach had testified that he had paid a $3,000 bill to Al Mazz and his accounting firm for a preliminary business study that was done for Preferred Plus prior to Bradach's involvement with the plan. The government introduced this purported study, as well as a transcript excerpt of Bradach's testimony at the first trial, at Phillips's second trial in an alleged attempt to impeach Bradach. Defense counsel now asserts that the prosecutor intentionally misused this evidence, which was allegedly mischaracterized by a confused Bradach, in an attempt to reinforce the evidence in its case-in-chief that Bradach did not become involved in Preferred Plus until after the initial July 3, 1985, payment to Phillips.

The government's queries to Bradach regarding his alleged payment of expenses on behalf of Preferred Plus were a valid impeachment of Bradach's credibility. Phillips complains that the government was not cross-examining Bradach to establish the truth and was therefore acting improperly. The point of impeachment, however, is not to vouch for the validity of the impeachment material; rather, it is to suggest that the witness may be mistaken or inconsistent in his testimony and therefore is not a credible witness. Viewing the cross-examination of Bradach as a whole, it is apparent that the prosecutor was merely striving to compel Bradach to clarify the turbid waters surrounding the Gary Insurance Agency and the Preferred Plus scheme. The effect of the FERS letter, the contradictory date on the letter, and Bradach's confusion regarding it merely suggested that Bradach's testimony was unreliable because he could not accurately recall what he had paid for. In all events, Bradach refused to identify the FERS proposal as the actual study for which he had paid $3,000:

> [Prosecutor]: This is the book that you referred to, sir, that you paid the $3,000

for. It wasn't prepared until August 22, 1985?

[Bradach]: I didn't know when this book was prepared or whether the $3,000 reflected the service for this book or earlier work that I was led to believe Mr. Fry had ordered from this same firm prior to my introduction to this program. I mentioned that twice now.

Bradach's testimony on cross-examination was marked by equivocal responses to the government's repeated attempts to untangle the complex web of payments Bradach reputedly made for services performed on behalf of Preferred Plus prior to Bradach's involvement. While the government may have had an unsure grasp on the "true facts," our review of the record suggests that this resulted more from the convoluted paper trail that Bradach left and his insistence on a particular version of events supported by a hazy recollection.

■ The defendant's present citation to evidence outside the record to establish his version of the truth, which he alleges conflicts with the government's, is of no avail in the context of appellate review. Such material should have accompanied a timely new trial motion [2] or could be introduced in the future as evidence supporting a motion under 28 U.S.C. § 2255. An appellant may not attempt to build a new record on appeal to support his position with evidence that was never admitted in the court below. *Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1392 n. 4 (7th Cir.1990); *Anthony v. United States,* 667 F.2d 870, 875 (10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982). Moreover, the defendant concedes that Richard Fry, whose 302 statement Phillips now relies upon as a source of "true facts," was "not the most reliable of witnesses," and wove tales out of whole cloth concerning his valuable connections to the Teamsters union.

■ Phillips's claim of ineffective assistance of counsel during Bradach's testimony similarly lacks merit. In *Strickland,* the Supreme Court stated that reviewing

courts must make "every effort ... to eliminate the distorting effects of hindsight" and apply a "heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 689, 691, 104 S.Ct. at 2065, 2066. The defendant's attacks on his trial counsel's performance are guided by the perfect vision of hindsight and amount to an exercise in second-guessing trial strategy. Throughout the government's cross-examination of Bradach, the witness maintained that while he paid FERS $3,000 for a preliminary study that FERS completed for Preferred Plus, he had no idea whether the bundle of papers the prosecutor was brandishing represented the work product for which he had paid. When the government then sought to introduce the FERS proposal, defense counsel unsuccessfully objected on the ground that the witness never identified the proposal as the study he had paid for. Unadmitted documents may have suggested that Bradach paid FERS $3,000 for a reason other than the preparation of a study, but defense counsel could have reasonably decided that Bradach's statements were more reliable and that the government's attempts at impeachment were so weak that rehabilitation via redirect examination was unnecessary. Defense counsel also may have been understandably reluctant to emphasize Bradach's limited powers of recall by introducing *potentially* impeaching evidence.

B. *Counsel's Stipulation to the Admission of the "Blue Books" as Business Records and the Government's Misuse of this Evidence*

■ Defense witness James Bradach testified that at his June 10, 1985, meeting with James Ward, Ward gave him a "blue book" that described the Preferred Plus plan and identified its principals. Ward had earlier testified that he had prepared a thin prospectus, marked as government exhibit 8–B, that he purportedly gave to Bradach at the June 10, 1985, meeting. This thin volume was one of three brochures concerning Preferred Plus that were admit-

---

**2.** The district court denied Phillips's motion for a new trial because it was filed after the seven-day period for filing such motions under FED. R.CRIM.P. 33 had passed.

ted by stipulation as government exhibits 8–A, 8–B, and 8–C that Bradach had received at various times. During his cross-examination of Bradach, the prosecutor flourished government exhibit 8–C, pointed out the June 24, 1985, date on the exhibit, and inquired as to how Bradach could have received this document at the June 10, 1985, meeting. The defendant now alleges that the government's use of the exhibit was prosecutorial misconduct, and that he received ineffective representation when trial counsel stipulated to the admission into evidence of exhibits 8–A, 8–B, and 8–C. The defendant also implies that trial counsel was incompetent for allowing the prosecutor to mislead the witness and the jury with exhibit 8–C. Phillips maintains that the prosecutor's decision to pass off exhibit 8–C as the first document Bradach received, when Ward had previously identified exhibit 8–B as the initial document he had given Bradach, was either the product of prosecutorial ineptitude or underhandedness designed to confuse Bradach into impeaching himself as a result of governmental deception. The prosecutor's purported charade, however, failed to achieve the desired prejudicial result when the witness discerned that the prosecutor had switched the exhibits:

> [PROSECUTOR]: I have a question, sir. If you got this book on June 10th of 1985, how is it that it wasn't prepared until June 24th of 1985?
>
> [BRADACH]: I don't know if that date is either accurate or what could cause the discrepancy in dates.
>
> [PROSECUTOR]: You have no explanation for that?
>
> [BRADACH]: No, I don't. What date was that small book produced?
>
> [PROSECUTOR]: I'm sorry, Mr. Bradach, you're not here to ask questions.
>
> [BRADACH]: I apologize.
>
> [PROSECUTOR]: So again, you have no explanation as to how you got a book two weeks before it was even created, is that what you're telling us?
>
> [BRADACH]: No. I might be confused; *I received the smaller book on June 10th and the larger book thereafter.*

(emphasis added). Trial counsel adroitly dissipated any lingering confusion when he elicited testimony from Bradach on redirect concerning the source of Bradach's earlier misunderstanding concerning exhibits 8–B and 8–C. Bradach testified that he first must have received the smaller document, exhibit 8–B, rather than the longer document, exhibit 8–C, which the prosecutor repeatedly referred to on cross-examination. The defendant's assertions in his brief that "[trial counsel] ... failed to read or understand the contents of ... government exhibits [ ] 8–B and 8–C," and that he did not effectively counter the confusion caused by the prosecutor's misleading cross-examination, belittle trial counsel's able handling of the situation and are plainly belied by the record. Although the prosecutor's conduct may have been misleading, it did not affect the overall fairness of the trial or substantially influence the trial's result.

Appellate counsel's assertion that trial counsel rendered ineffective assistance by stipulating that government group exhibit 8 was admissible as a business record is unsupported by any citation to pertinent case authority or evidentiary rule. Unlike appellate counsel, we do not find it unusual that the record is devoid of information showing who wrote the information in the exhibit, who transmitted the discrete pieces of information in the exhibit, and when such information was transmitted. The whole point of a stipulation is to avoid the time-consuming introduction of foundation evidence, when counsel for both sides know that the proponent can establish a foundation. Appellate counsel has cited nothing in the record that would have precluded the government from establishing that exhibit 8 was admissible as a business record. We are compelled to conclude on this record that trial counsel effectively represented the defendant both when agreeing to the stipulation and when countering the government's misuse of the evidence.

## C. Government Rebuttal Testimony and the Telephone Records of James Bradach

As rebuttal evidence, the government introduced the long-distance telephone records of Bradach and his insurance agency for 1985. IRS Agent Bigda also testified that agents contacted the telephone numbers on the records to determine whether the parties who were called knew about Preferred Plus. The agents contacted the persons who were assigned the telephone numbers to investigate Bradach's claim that after his alleged June 10, 1985, meeting with Ward, he phoned various people in his search of funding for the plan. Agent Bigda testified that his investigation revealed that Bradach first telephoned others concerning the plan on October 10, 1985, and not on June 10, 1985, as Bradach had claimed. Because the telephone records show that Bradach had telephoned Equitable Insurance, which Phillips alleges was where Ward's office was located, two times in May 1985, on June 10, and twice in September 1985, Phillips asserts that the government improperly represented that Bradach made no calls relating to the plan prior to June 10 and defense counsel rendered ineffective assistance by failing to challenge this representation. Moreover, appellate counsel asserts that even a cursory examination of the exhibits concerning Bradach's telephone records reveals that the government did not call all of the telephone numbers listed on the exhibits and the exhibits did not contain all of the comments of the parties that were contacted.

In its brief and at oral argument, the government alleged, without dispute from appellate defense counsel, that all of the telephone calls to Equitable Insurance were traceable only to a general switchboard and not to any particular office. The government postulates that the calls likely concerned insurance business relating to Bradach's insurance agency and not concerning the Preferred Plus plan. The government further asserted that while Ward was employed as an agent for Equitable, his office was not located at Equitable Insurance's main office in Chicago, but rather in Wilmette, Illinois. As sup-port for its claim that Ward's office was in Wilmette, the government directed us to an exhibit bearing Ward's business card that listed a Wilmette address. In response, defendant merely observes that the 302 report prepared after the FBI's interview of Ward notes that the interview took place in a restaurant located in the Equitable Insurance Building. The government suggests that the location of the FBI interview supports its claim that Ward did not have an office in the building.

The actions of the government and defense counsel regarding the five phone calls to Equitable Insurance's general switchboard will not support a finding of prosecutorial misconduct or ineffective assistance of counsel. Agent Bigda's testimony was apparently entirely accurate-the earliest call from Bradach that Bigda could verify as relating to the plan was placed on October 10, 1985. Defense counsel potentially could have undermined Bigda's direct testimony on cross-examination by eliciting testimony that Bradach had placed several calls to the Equitable Insurance Building before and on June 10, but he could have reasonably decided that such an attack would be fruitless given that Ward's office was located in Wilmette and not in the Equitable Insurance Building in Chicago.

Phillips also bases his misconduct and ineffective assistance claims on the absence of the agent's written comments for some of the numbers listed on Bradach's phone records. Phillips maintains that the absence of notes next to some of the numbers indicates that the agents did not call all of the phone numbers. In response, the government alleges that the agents called all of the numbers but simply did not write comments next to each one. Although the absence of the agents' comments might have been an effective issue for defense counsel to explore on cross-examination, it is impossible for us to judge on this record whether trial counsel rendered ineffective assistance. Phillips has failed to show that his trial counsel's decision not to pursue this line of inquiry fell outside the range of professionally competent assistance and "that there [was] a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### D. *Weichman's Notes and Telephone Records*

Phillips contends that his trial counsel rendered ineffective assistance when he failed to use certain evidence at his disposal that allegedly would have helped establish that Bradach met with Weichman, Ward, and Ashbach on June 10, 1985. Phillips asserts that the following items of evidence should have been used by trial counsel to bolster defendant's claim that he attended a meeting on June 10: a notation in Weichman's telephone log for June 10 showing a telephone call from Bradach regarding meetings with Ashbach and Pascale; a telephone call listed at 2:48 p.m. on June 10, 1985, on Bradach's telephone record to Equitable Insurance; and a call listed on Weichman's telephone records that was made to Rebecca Lake on the evening of June 10, 1985.

Defendant has failed to demonstrate that defense counsel was incompetent in neglecting to put these items into evidence or emphasize the alleged importance of those that were in evidence. None of these items establishes that Bradach *met* with the principals of Preferred Plus on June 10 or even remotely suggests that Bradach hired Phillips, Hetrick, and Gjebre to further the plan. The telephone call from Bradach to the Equitable Insurance Building was at best an ambiguity, considering that Weichman's office was in Wilmette. Weichman's telephone log was in evidence, but it did not establish or strongly suggest that any meeting took place on June 10. The government aptly notes that all of the participants at the meeting testified at trial and none of them mentioned that anyone telephoned Rebecca Lake. Although the phone records might have supported the defendant's claim that the meeting occurred on June 10, 1985, if one of the participants had testified that someone had called Lake, we cannot say that trial counsel was incompetent for not entering the records into evidence.

### III. THE PROSECUTOR'S INTEMPERATE REMARKS

Combining allegations of prosecutorial misconduct with claims of ineffective assistance of counsel, Phillips argues that the prosecutor's lack of restraint in argument resulted in reversible error and in the violation of the trial court's ruling on a motion in limine.

In granting the defendant's motion in limine, the district court admonished the prosecutor not to introduce testimony concerning the following areas: 1) the defendant's prior record or history of gambling; 2) any statements from Weichman, Gjebre, or Hetrick regarding gambling; 3) any statement concerning Phillips's present employment; 4) the immunity given to Phillips; and 5) hearsay statements from Phillips's joint venturers. Phillips argues that the prosecutor violated the district judge's order by improperly arguing that a conspiracy existed among Bradach, Hetrick, Gjebre, and Phillips.

The record does not reveal that the government abrogated the trial court's very specific order in any respect. While the government introduced evidence that Bradach had made similarly large payments to Hetrick, Phillips, and Gjebre for the same alleged purpose, such evidence was clearly relevant to the jury's determination of whether Phillips's claims of employment with Preferred Plus were untrue. Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless otherwise provided in the rules. That the employment of the three men on behalf of the plan for handsome salaries was withheld from the other principals in the plan certainly cast doubt on Phillips and Bradach's claim that Bradach paid Phillips for legitimate employment and supported the government's claim that Phillips committed perjury during his grand jury testimony. The prosecution neither engaged in misconduct in introducing such evidence nor did defense counsel render ineffective assistance in failing to object to its introduction.

■ Troubling to this court, however, are the prosecutor's improper characterizations of the witnesses to the jury. The assistant United States attorney who tried this case referred to Bradach as a "liar" and "slimy"; Hetrick as a "clumsy, thick-tongued ... thug"; and all three of Bradach's putative employees as "bozos." The prosecutor also remarked that Weichman's June 10, 1985, telephone log was a "trumped up" document. The government concedes that the "slimy" and "bozos" aspersions were improper, but asserts that they were not so prejudicial as to require reversal. The government justifies the remaining prosecutorial slurs as reasonable inferences from the evidence presented. *See United States v. Spivey,* 859 F.2d 461, 466 (7th Cir.1988); *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985).

We recognized in *United States v. De-Geratto,* 876 F.2d 576, 587 (7th Cir.1989), that "[s]ometimes in the heat of argument [the] line between proper and improper argument may be unintentionally crossed." The prosecutor crossed the line of propriety in this case. Nonetheless, any prejudicial effect of the prosecutor's puerile comments was not significant in light of the ample evidence that the defendant had prevaricated before the grand jury. *See United States v. Mealy,* 851 F.2d 890, 903 (7th Cir.1988); *United States v. Torres,* 733 F.2d 449, 461–62 (7th Cir.), *cert. denied,* 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984); *United States v. Phillips,* 640 F.2d 87, 92 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). The jury could easily find that the defendant's claim and Bradach's testimony that Preferred Plus paid Phillips substantial sums of money merely for "being available," when none of the other principals of the plan even knew of Phillips's existence, was beyond belief.

In *United States v. Manos,* 848 F.2d 1427, 1437 (7th Cir.1988), we noted that if the facts of the case support an inference of perjury, "labeling the falsity a lie or the teller of the falsity a liar does not make the reasonable inference unduly prejudicial, *United States v. Holt,* 817 F.2d 1264, 1276 n. 10 (7th Cir.1987), unless the terms are used to the point of excessiveness so that the jury's 'calm and detached search for truth' is impaired, *United States v. Spain,* 536 F.2d 170, 175 (7th Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976)." During the course of his opening statement and closing argument, the prosecutor alleged that the grand jury had found that Phillips had lied to them, he stated that Phillips had lied to aid Bradach, and he claimed that Bradach was a liar as well. The few occasions where the prosecutor inferred that Bradach and Phillips were liars were not so frequent as to impair the jury's search for truth. *See United States v. Jungles,* 903 F.2d 468, 479 (7th Cir.1990); *Manos,* 848 F.2d at 1436–37.

The prosecutor's remark in his opening statement that the grand jury had indicted Phillips because it found that he had lied during his testimony was unquestionably improper. *See United States v. Tucker,* 820 F.2d 234, 237 (7th Cir.1987). Defense counsel did not object to the statement; therefore, we may reverse only if the government's comment constituted plain error. *Manos,* 848 F.2d at 1437. The Supreme Court has noted that "the plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). Although the prosecutor might have intended to describe the grand jury process, there was no reason for such an explanation and the clumsy manner in which it was done could have suggested to the jury that it should find Phillips guilty because the grand jury did. The district judge, however, instructed the jury prior to opening statements that the indictment simply described the charge against the defendant and was not evidence of guilt. Phillips's trial counsel also responded in his opening statement to the prosecutor's improper remark by explaining the differences between a grand and a petit jury—most pertinently the difference

between a grand jury's finding of probable cause and a petit jury's finding of guilt. The defense's opportunity to rebut the prosecutor's improper remark is a factor militating against a finding of prosecutorial misconduct. *See Darden v. Wainwright,* 477 U.S. 168, 182–83, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986). We are certain that Phillips was convicted as a result of the evidence produced at trial, and not because of the prosecutor's inappropriate rhetoric. We also do not believe that a miscarriage of justice resulted, although the prosecutor's unnecessary animadversions complicated an otherwise straightforward case.

## IV. THE DISTRICT COURT'S MATERIALITY FINDING

█ Phillips also challenges the materiality of his grand jury testimony to the grand jury's investigation. Materiality is an essential element of the crime of making false statements to a grand jury. *United States v. McComb,* 744 F.2d 555, 563 (7th Cir.1984). For purposes of 18 U.S.C. § 1623, materiality is defined as a statement's "effect or tendency to impede, influence, or dissuade the grand jury from pursuing its investigation." *United States v. Picketts,* 655 F.2d 837, 839 (7th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *McComb,* 744 F.2d at 563. Nonetheless, "[m]ere potential interference with a line of inquiry is sufficient to establish materiality." *McComb,* 744 F.2d at 563 (citing *United States v. Howard,* 560 F.2d 281 (7th Cir.1977)).

In *McComb,* we noted that the government can meet its burden of establishing a nexus between the grand jury's investigation and the defendant's false statements by presenting some evidence showing the scope of the investigation. *McComb,* 744 F.2d at 654. We cited the following means of establishing materiality:

The foreperson or some other member of the grand jury may be called to establish the investigation's scope. The attorney who represented the government's case to the grand jury might be called to testify. The transcript of the grand jury proceedings might be introduced into evidence, or the indictments returned by the grand jury might be examined.

*Id.* (citations omitted). At Phillips's first trial, the district court found that the government had established the materiality of Phillips's grand jury testimony after the court considered government exhibits M–1 through M–21, trial exhibits 2 and 3, and the testimony of IRS Agent Anselmo. Agent Anselmo's testimony and the government's exhibits, which included the grand jury testimony of all the major witnesses who testified at Phillips's trial, clearly indicate that Phillips's testimony was material to the grand jury's investigation of Bradach's alleged bribery of Lake County, Indiana, commissioners. The district court reaffirmed its earlier materiality ruling before Phillips's second trial. Phillips does not challenge the propriety of the district court's initial finding of materiality; rather, Phillips maintains that a handwritten note submitted by the prosecutor at the first trial as a proposed initial jury instruction undermines the materiality finding. The November 16, 1988, note provided as follows:

The March 1986 Special Grand Jury was conducting an investigation into the payment of bribes by James J. Bradach and another to certain Lake County officeholders in exchange for Bradach receiving the Lake County insurance business. This statement does not suggest nor should you infer from it that James Phillips was involved in that scheme, but merely places Phillips' testimony before the Grand Jury in context.

Read in isolation, this concession by the government appears to contradict the government's evidence at the materiality hearing that suggested that Phillips was operating as a conduit or money launderer for Bradach's bribery scheme. Nevertheless, it is apparent from the transcript that the government initially proposed that the district judge read the statement to the jury simply to inform the jurors of the grand jury investigation's overall purpose. The prosecutor's statements in support of his proposal clearly indicate that the second sentence was included merely to assuage

defense counsel's concern that the jury would infer from the first sentence that Phillips himself was actively engaged in bribery:

> [PROSECUTOR]: I just want a succinct statement that I had hoped we could agree on that the Court could read to [the jury] that the Court could discern from the materiality of it as well.
>
> My second sentence would be that you are being told this merely to place Mr. Phillips' testimony in context, and it in no way suggests that Mr. Phillips was involved in bribing anyone. That's [defense counsel's] concern. But I think they have got to be told something, or else they are going to wonder what is this whole thing even about.

We find that this proposed statement, which the trial court declined to read to the jury, did not subvert the trial court's earlier materiality finding.

■ In summary, we find no merit to appellant's claims of ineffective assistance of counsel or prosecutorial misconduct based upon this record. We note that a defendant may raise a claim of ineffective assistance of trial counsel under 28 U.S.C. § 2255 rather than on direct appeal when it is necessary to supplement the record to establish the claim. *Page v. United States*, 884 F.2d 300, 301–02 (7th Cir.1989); *Johnson v. United States*, 838 F.2d 201, 205 (7th Cir.1988); *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Of course, when an appellate court is able to evaluate the grounds upon which trial counsel is said to be ineffective on the existing record, the claim of ineffectiveness is forfeited if not initially raised on appeal. *Johnson*, 838 F.2d at 206; *Cartee v. Nix*, 803 F.2d 296, 301–04 (7th Cir.1986), *cert. denied*, 480 U.S. 938, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987). Undoubtedly out of concern that he would forfeit his client's ineffectiveness of counsel claim, appellate counsel chose to first air his many grievances in this court rather than before the district court that sentenced Phillips. Some of the claims that appellate counsel has denoted as the most flagrant instances of ineffective assistance

of trial counsel, however, appear relatively innocuous, and we are unable to determine from this record whether trial counsel was indeed ineffective. An evidentiary hearing on a section 2255 motion before the sentencing judge might reveal whether such claims of ineffective assistance of trial counsel are warranted. The bare record that we must review, however, does not disclose that the appellant's claims have merit.

In this opinion, we have addressed those claims that appellate counsel in his brief and at oral argument alleged were the most compelling reasons for a reversal of Phillips's conviction. We have omitted separate discussion of his remaining claims. Nonetheless, we have considered each of his allegations and conclude that none of them, either separately or collectively, requires a new trial. Phillips's conviction is therefore AFFIRMED.